**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BRETT BRENNER,

Plaintiff,

v. Case No.: 3:26-cv-1362-WWB-PDB

FIFTH THIRD BANK, NATIONAL ASSOCIATION,

Defendant.
____________________________________/

**ORDER**

THIS CAUSE is before the Court on Defendant's Motion to Dismiss Amended Complaint (Doc. 23) and Plaintiff's Response (Doc. 24). For the reasons set forth below, Defendant's Motion be granted and the Amended Complaint (Doc. 13) will be dismissed without prejudice.[1]

## I. BACKGROUND

Plaintiff Brett Brenner is the trustee of a Florida special needs trust (the "**Trust**"). (Doc. 13, ¶ 2). He alleges that Devry Dewan, the Trust's immediate past trustee, misappropriated over $160,000 from the Trust's account after declining into an impaired mental state. (*Id.* ¶¶ 6, 10–12, 15, 17, 21). The account was held by Defendant, Fifth Third Bank, National Association. (*Id.* ¶¶ 13–14). Dewan was well-known at several of Defendant's Jacksonville branches, where he sometimes utilized spare offices to do work. (*Id.* ¶¶ 7–8).

[1] Defendant's Unopposed Motion for Leave to File Reply (Doc. 27) will therefore be denied as moot.

The Trust account's activity was regular for years preceding Dewan's decline. (*Id.* ¶ 16). Plaintiff alleges that Defendant, despite knowing of the decline, allowed Dewan to illicitly withdraw Trust funds through a series of suspicious transactions concentrated over a seven-week period. (*Id.* ¶¶ 17, 23, 26, 32). During his in-person transactions, Dewan was sometimes accompanied and assisted by one or two women who were not authorized to withdraw funds from the Trust. (*Id.* ¶¶ 24–25). Given the unusual presence of these individuals, the irregular size and frequency of Dewan's withdrawals, and Defendant's knowledge of Dewan's impairment, Plaintiff alleges that Defendant should have questioned or reviewed the transactions before allowing them to close. (*Id.* ¶¶ 18, 27, 29, 31, 33). Accordingly, Plaintiff asserts claims for aiding and abetting a breach of fiduciary duty (Count I), breach of fiduciary duty (Count II), and negligence (Count III) against Defendant. (*See generally id.*).

## II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

"The elements of a claim for breach of fiduciary duty are[] the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). Stating a claim for aiding and abetting a breach of fiduciary duty requires additional allegations that plausibly suggest the defendant knew of the underlying breach and substantially assisted in or encouraged the wrongdoing. *Anderson v. Talentsy, Inc.*, 599 F. Supp. 3d 1207, 1214 (M.D. Fla. 2022) (citing *Taubenfeld v. Lasko*, 324 So. 3d 529, 540–41 (Fla. 4th DCA 2021)). As pertinent here, stating a claim for negligence also requires alleging the existence of a duty and the defendant's breach thereof. *See Ruth v. Guerrieri Mgmt., Inc.*, 397 So. 3d 781, 785 (Fla. 5th DCA 2024).

Defendant argues that in Count I Plaintiff fails to allege knowledge and substantial assistance. As to Counts II and III, Defendant argues that Plaintiff fails to allege the existence of a duty. As explained below, these arguments all depend on whether Plaintiff has sufficiently alleged Defendant's knowledge of an underlying wrong. However, the parties refer to an "actual knowledge" requirement and seem to agree that Plaintiff's allegations must raise a heightened, "strong inference" thereof. (*See* Doc. 23 at 3–6, 15;

Doc. 24 at 2–3, 5). The Eleventh Circuit has disclaimed the need to allege "a strong inference of actual knowledge" in common law claims and acknowledged "that a plaintiff rarely will be able to plead a defendant's actual state of mind." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1179–80 (11th Cir. 2025) (quotation omitted). What a plaintiff must do is plead facts raising a plausible inference "that [the] defendant knew about the alleged [wrongdoing]" or had "a general awareness [of] its role []as part of an overall improper activity." *Id.* at 1178, 1180 (quoting *Gilison v. Flagler Bank*, 303 So. 3d 999, 1003 (Fla. 4th DCA 2020)); *see also* Fla. Stat. § 736.0104(1)(a)–(c).

The *Otto Candies* plaintiffs plausibly alleged knowledge by relying on defendant Citigroup's admission of belief that one of its employees had directly participated in a fraudulent scheme the bank had confirmed through its own internal investigation.[2] 137 F.4th at 1174–75, 1181. The plaintiffs also alleged that Citigroup terminated eleven more employees for otherwise "fail[ing] to protect [the] company from [the scheme]," and that still others were charged with "knowing participation in the fraudulent scheme" by Mexican authorities. *Id.* at 1181–82. Moreover, the alleged scheme itself, in which Citigroup conspired to increase its interest earnings by defrauding bond investors of one of its debtor's, was inherently dependent upon "Citigroup's knowledge, consent, and funding." *Id.* at 1174; *see also id.* at 1182 (where Citigroup's high-interest advances to the debtor dwarfed the debtor's projected revenue, "the discrepancies between the cash-advance

[2] "Under Florida law, knowledge an agent or employee acquires within the scope of her authority generally may be imputed to her principal or employer." *Otto Candies*, 137 F.4th at 1180 (quoting *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1095 (11th Cir. 2017)). The Court also notes that alleging knowledge will often involve circumstantial, rather than direct, factual allegations. *See Garcia v. Character Techs., Inc.*, 785 F. Supp. 3d 1157, 1174 (M.D. Fla. 2025); *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1296 (M.D. Fla. 2018).

values and the underlying [] contracts render[ed] it plausible that Citigroup knew of the fraud"). In sum, the *Otto Candies* pleading went far beyond "[a]lleging that a bank disregarded red flags . . . [which] is insufficient" to show knowledge of an underlying wrong. *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014).

While the parties cite to a number of pre-*Otto-Candies* cases applying a heightened standard for pleading knowledge, their arguments remain appropriate for resolution. Broadly speaking, Defendant argues that Plaintiff's allegations fail to suggest that it knew of Dewan's wrongdoing. Defendant states that the Amended Complaint suggests only that Defendant *should have known* of the wrongdoing, but this is a generous reading of Plaintiff's allegations. What Plaintiff alleges is that, based on a number of irregularities, Defendant should have been alerted to unusual account activity or reviewed or questioned certain transactions. (Doc. 13, ¶¶ 18, 27, 29, 31, 33). Additionally, Plaintiff alleges that Defendant knew Dewan had become mentally impaired. (*Id.* ¶¶ 23, 32). But no factual allegations suggest why or how Defendant learned of the impairment. Nor are there allegations plausibly suggesting that Defendant affirmatively participated in Dewan's wrongdoing. In the end, the Amended Complaint "go[es no] further than alleging [Defendant] ignored red flags" associated with a well-known patron. *Garcia*, 785 F. Supp. 3d at 1175. As Defendant notes, it follows that Plaintiff fails to sufficiently allege that Defendant knew of Dewan's underlying breach. *See Lamm*, 749 F.3d at 950.

Moreover, without knowledge of Dewan's breach, Plaintiff's theories of substantial assistance necessarily fail. Plaintiff does not appear to contest this reasoning. He argues that Defendant's substantial assistance came in two forms—active participation in

Dewan's breach and inaction in the face of clear evidence of a breach. However, both theories depend upon Defendant's knowledge, and neither is supported by the Amended Complaint.

Plaintiff's arguments on the first theory are altogether conclusory and fail to cite to the pleading or any authority and are thus abandoned. *See Cousins v. Sch. Bd. of Orange Cnty., Fla.*, 687 F. Supp. 3d 1251, 1280 (M.D. Fla. 2023) (collecting cases). Plaintiff does state that "[t]he complaint alleges the bank gave Dewan the . . . trust's money, in cash, when he showed up clearly impaired and requested it." (Doc. 24 at 4). Assuming that the Amended Complaint makes such an allegation, it is akin to Plaintiff's "ref-flag" arguments that fail in the first instance to allege knowledge. But the Amended Complaint does not allege facts suggesting that, during the course of any particular transaction, Dewan's impairment was or should have been clearly observable. Rather, it alleges generally that Dewan was impaired when he made unauthorized withdrawals from the Trust account, and it alleges generally that Defendant's employees were aware of his impairment. (*See* Doc. 13, ¶¶ 23, 31–32). No allegations suggest that Dewan's otherwise unidentified mental impairment would or should have been clear to every bank teller with whom he made contact.[3]

Plaintiff's second theory and his remaining claims fail for substantially the same reasons. First, Plaintiff's arguments on these matters are conclusory, presented in the

[3] While the Court need not continue to address the plausibility of this abandoned argument, had Dewan's impairment been as clear as Plaintiff suggests in his Response, one might wonder why no one had requested his removal as trustee. *See* Fla. Stat. § 736.0706 (providing for removal or a trustee); (Doc.13, ¶ 21 (alleging that Dewan's mental impairment occurred "prior to his resignation as trustee" and, accordingly, prior to the seven-week span in which he allegedly breached his fiduciary duties as trustee)).

abstract, and are not applied to the facts alleged in the Amended Complaint. Second, Plaintiff's failure to allege knowledge is fatal to his ability to allege a breach of duty based on Defendant's inaction. As Plaintiff acknowledges, banks have no freestanding fiduciary duty to supervise their customer's accounts. (Doc. 24 at 4–5); *see also Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 549 (Fla. 2d DCA 2003) ("The law has generally refused to transform a banking relationship from a debtor/creditor relationship to one involving fiduciary duties."); Fla. Stat. § 736.1016(1)–(3) (protecting from liability persons who deal in good faith with a trustee and disclaiming a duty for such persons to inquire into "the trustee's powers," "the propriety of their exercise," or the "proper application" of delivered trust assets). Indeed, "a bank's inaction—that is, its failure to stop the theft of [] trust funds—can constitute substantial assistance" only because banks have a more limited "duty to safeguard trust funds deposited with them when confronted with clear evidence indicating that those funds are being mishandled." *Chang*, 845 F.3d at 1098 (quotation omitted). Thus, "to establish that a bank substantially assisted [an unlawful] scheme to steal trust funds, knowledge of the underlying [scheme] is the crucial element." *Id.* (quotation omitted). So where, as here, a plaintiff fails to sufficiently allege a defendant's knowledge of any underlying wrongdoing, his allegations of the defendant's substantial assistance in that wrongdoing are necessarily implausible.

Nor can Plaintiff, lacking sufficient allegations of Defendant's knowledge, plead the existence of a duty flowing from Defendant to the Trust or its beneficiary. *Chang*, 845 F.3d at 1098 ("Chang's allegations establish that the Bank . . . knew . . . about Gordon's ongoing fraud. Thus, the bank owed a fiduciary duty to Chang."). Because Plaintiff

defends Counts II and III solely on the basis of a bank's duty to safeguard trust funds from known misappropriation, they must be dismissed alongside Count I.[4]

## IV. CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Amended Complaint (Doc. 23) is **GRANTED** to the extent provided herein.
2. Defendant's Unopposed Motion for Leave to File Reply (Doc. 27) is **DENIED as moot**.
3. The Amended Complaint (Doc. 13) is **DISMISSED without prejudice**. Plaintiff may file a second amended complaint on or before **December 3, 2026**, to correct the deficiencies noted herein. The failure to timely file an amended pleading in compliance with this Order will likely result in this action being dismissed with prejudice.

**DONE AND ORDERED** in Jacksonville, Florida on November 20, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

[4] Defendant moves for dismissal with prejudice. While Plaintiff has not moved for or requested the opportunity to amend, the Court will "exercise [its] discretion in favor of allowing amendments to reach the merits of a dispute." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021).